UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN M.G. VEGA, | : |
| Plaintiff, | : |
| v. | : Civ. No. 23-651 (KM) (ESK) |
| OSCAR AVILES, NURSE WINT, | : **OPINION** |
| Defendants. | : |

**KEVIN MCNULTY, U.S.D.J.**

Pro se plaintiff John M.G. Vega, a pretrial detainee at Hudson County Jail (the "Jail"), seeks to commence a lawsuit pursuant to 42 U.S.C. § 1983 stemming from his alleged exposure to the COVID-19 virus at the Jail. DE 1. Vega also moves to proceed *in forma pauperis* ("IFP"). DE 1-2. For the reasons below, Vega's motion to proceed IFP is granted, but his complaint is dismissed without prejudice on initial screening.

A. IFP

A prisoner seeking to file a civil action IFP must submit an affidavit, including a statement of all assets, stating that the prisoner is unable to pay the fee. 28 U.S.C. § 1915(a)(1). The prisoner also must submit a certified copy of his inmate trust fund account statement for the six-month period immediately preceding the filing of his complaint. 28 U.S.C. § 1915(a)(2). Here, Vega has complied with the PLRA's requirements and demonstrated indigence. DE 1-1. Accordingly, IFP status is appropriate, and Vega's IFP motion is granted.

### B. Factual Allegations[1]

Having granted IFP status, I am obligated to screen the complaint. *See* 28 U.S.C. §§ 1915A(b) & 1915(e)(2)(B). For screening purposes, as on a motion to dismiss, I accept the well-pleaded, plausible allegations in the amended complaint as true. The complaint alleges as follows.

In January 2022, Vega was sent to "the Integrity House Drug Program in the Jail." DE 1 at 8. "Inmates were catching this deadly virus in a alarming rate" and "were being sent from [Vega's] unit[,] E-5-N[,] to a COVID-19 unit for infected inmates." *Id*. Vega does not state how long he had been detained as of January 2022.

"Around the middle of 2022," Vega "started to feel the worst flu-like symptoms" he had ever felt. *Id*. His head "hurt so bad" and his "bones felt like they were on fire." *Id*. He "continuously complained to Nurse Wint about how [he] was feeling and that day by day got worse." *Id*. Nurse Wint "gave [him] Tylenol" and "told him to go lay down—that what [he] was feeling would soon pass." *Id.* But instead "these symptoms along with [his] breathing . . . being affected" caused him "the worst pain." *Id*. "All [he] could do was endure this torture." *Id*. He asked for help, "but to no avail." *Id*. He "complained for days with no positive results." *Id*.

In October 2022, Vega "requested medical care on the Jail kiosk with no response." *Id*. at 9. "[S]everal times [he] had symptoms." *Id*. On November 2, 2022, he "wrote a grievance which was forwarded to medical on November 4, 2022 by Lt. Butter and still to date no response." *Id*. "This whole time of [his] suffering [he] did it on [his] own—with no help for medical or jail officials[.] [He] just had to endure." *Id.*

---

[1] Quoted language throughout this Opinion is taken *sic* from the original source.

"SGI Castro was the SGI [he] saw the most" and to whom he "complained repeatedly." *Id*. When Vega asked, "Why does the warden allow us to suffer in these units when we're clearly sick?" Castro responded, "The Director is clearly capable of maintaining the Jail during this pandemic." *Id.* at 8–9. When Vega further asked: "New Jersey mandated strict restriction for society as a whole but hospitals and institutions are held to higher standards, so why do y'all house us the way you do[?]" Castro replied, "The Director of [the] Jail is responsible, capable fully of adhering to the New Jersey State mandate." *Id.* at 9.

The defendants named in the complaint are Oscar Aviles and Nurse Wint. DE 1 at 4. Vega seeks to hold Aviles liable because, as director of the Jail, "he is the head of [the] facility and what he says go!" *Id*. Vega asserts that "the State issued strict mandates for hospitals and institutions which [Aviles] did not adhere to clearly by every other day inmates on were being taking to COVID-19 tier." *Id.* In his request for relief, Vega asserts that he "would like [the] Jail to fix the major medical care problems that exist between inmates and medical and the Jail[,] also a monetary demand of 50.000." *Id.* at 6.

### C. Standard of Review

As noted above, district courts are required to review complaints in civil actions filed by prisoners, *see* 28 U.S.C. § 1915A(a), and to dismiss any case that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915A(b) & 1915(e)(2)(B).

"The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)). That standard is set forth in

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). To state a claim, the complaint must allege "sufficient factual matter to show that the claim is facially plausible." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation and internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). "[A] pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Pro se pleadings, as always, will be liberally construed. *See Rivera v. Monko*, 37 F.4th 909, 914 (3d Cir. 2022). Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

### D. Section 1983

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

*Id.* Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States, and second, that the alleged deprivation was committed or caused by a person acting under color of state law. *See Harvey v.*

4

*Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) (citations omitted); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).

A supervisor may not be held vicariously liable for the actions of subordinates under § 1983. *See, e.g.*, *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015). Thus, to adequately plead a plausible § 1983 claim against Aviles, Vega must plead facts which, if proven, would show that Aviles was personally involved in the alleged wrongs. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207–08 (3d Cir. 1988). This can generally be done in one of two ways. First, Aviles can be liable if he enacted a policy, practice, or custom that was the "moving force" behind an alleged constitutional violation. *See City of Canton v. Harris*, 489 U.S. 378, 389 (1989); *Los Angeles Cnty. v. Humphries*, 562 U.S. 29, 35–36 (2010). Second, Aviles may be held liable if he "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." A.*M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004). Knowledge, for these purposes, means "contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents." *C.H. ex rel. Z.H. v. Oliva*, 226 F.3d 198, 202 (3d Cir. 2000).

### E. Analysis

#### 1. Conditions of Confinement

Construing Vega's complaint liberally, he appears to assert claims for unconstitutional conditions of confinement on the basis of exposure to the COVID-19 virus and deliberate indifference to his serious medical needs on the grounds that he was ill and did not receive adequate treatment.

The Due Process Clause of the Fourteenth Amendment affords protections to pretrial detainees "at least as great as the Eighth Amendment protections available to a convicted

prisoner," *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983); *see also Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003), and is violated when a pretrial detainee is subjected to punishment that is not reasonably related to a legitimate governmental objective. *See Hubbard v. Taylor*, 538 F.3d 229, 236 (3d Cir. 2008). The Eighth Amendment requires prison officials to provide humane conditions of confinement. *See Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 256 (3d Cir. 2010); *see also Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "For the conditions of confinement to rise to the level of an Eighth Amendment violation, they must deny the 'minimal civilized measure of life's necessities.'" *Betts*, 621 F.3d at 256 (quoting *Farmer*, 511 U.S. at 835). Thus, "prison officials violate an inmate's Eighth Amendment rights when they deprive her of a single identifiable human need such as food, warmth, or exercise." *Chavarriaga*, 806 F.3d at 226 (cleaned up); *see also Betts*, 621 F.3d at 256 (inmates must receive "adequate food, clothing, shelter, and medical care," and prison officials must "take reasonable measures to guarantee the safety of inmates"). A "failure to provide minimally civil conditions of confinement to pre-trial detainees violates their rights against punishment without due process of law." *Roman v. DeMarco*, No. 18-8010, 2019 WL 452736, at *2 (D.N.J. Feb. 5, 2019) (citing *Reynolds v. Wagner*, 128 F.3d 166, 173–74 (3d Cir. 1997)).

"Unconstitutional punishment typically includes both objective and subjective components." *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). "[T]he objective component requires an inquiry into whether the deprivation was sufficiently serious and the subjective component asks whether the officials acted with a sufficiently culpable state of mind." *Id.* (cleaned up). To meet the objective component, the conditions must "cause inmates to endure such genuine privations and hardship over an extended period of time, that the adverse conditions become excessive in relation to the purposes assigned to them." *Hubbard*, 538 F.3d at

233 (cleaned up). To meet the subjective component, a detainee must assert that prison officials acted with deliberate indifference, meaning that they consciously disregarded a serious risk to the detainee's health or safety. *See Wilson v. Seiter,* 501 U.S. 295, 298-99 (1991); *Stevenson*, 495 F.3d at 68 ("a particular measure amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose") (quoting *Rapier v. Harris*, 172 F.3d 999, 1005 (7th Cir. 1999)).

The Third Circuit addressed COVID-19 in the prison setting in *Hope v. Warden York County Prison*, 972 F.3d 310 (3d Cir. 2020), explaining that when evaluating a detention facility's protocols, courts "must acknowledge that practical considerations of detention justify limitations on many privileges and rights," and "ordinarily defer" to the expertise of prison officials in responding to COVID-19 unless there is "substantial evidence in the record that the officials have exaggerated their response" to the situation. *Id*.

The gravamen of Vega's conditions-of-confinement claim appears to be that Aviles allegedly failed to comply with an unspecified state mandate for "hospitals and institutions" regarding COVID-19 policies. DE 1 at 4, 9. The manner in which the prison protocols supposedly fell short is not specified. This conclusory allegation does not support a finding that Aviles acted with a culpable state of mind, nor, even assuming it to be true, does it establish that conditions in the Jail rose to the level of "cruel and unusual punishment" necessary to state a claim for unconstitutional conditions of confinement. *See Manning, v. Hudson County*, No. 17-3450, 2019 WL 1423262, at *6 (D.N.J. Mar. 29, 2019) ("Plaintiff fails to state a claim for relief

because his allegations are vague and conclusory and contain too little factual matter for the Court to determine whether his civil rights were violated by Defendant.").

To the extent Vega claims his constitutional rights were violated merely by having been exposed to the virus, or by having been at an increased risk of exposure to the virus, the allegation is insufficient because exposure alone (or increased risk of exposure) does not establish a constitutional violation. *See Hope*, 972 F.3d at 329 (rejecting petitioners' arguments that exposure to COVID-19 was per se unconstitutional and that the Government must eliminate their risk of exposure to comply with constitutional mandates); *Bennett v. Aviles*, No. 22-7003, 2022 WL 17887227, at *3 (D.N.J. Dec. 23, 2022) ("Millions, of course, have contracted COVID both inside and outside of prison walls. Exposure alone does not establish that prison officials committed a constitutional violation.").

The complaint, as drafted, does not plausibly allege that Aviles acted with a culpable state of mind or that Vega's conditions of confinement were cruel and unusual or amounted to unconstitutional punishment. Accordingly, this claim must be dismissed.

### 2. Deliberate Indifference to Serious Medical Needs

The Due Process Clause of the Fourteenth Amendment applies to pretrial detainees' claims of inadequate medical care. *Bocchino v. City of Atlantic City*, 179 F. Supp. 3d 387, 403 (D.N.J. 2016). To state such a claim, a pretrial detainee must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).

A medical need is "serious" if it: (1) "has been diagnosed by a physician as requiring treatment"; (2) "is so obvious that a lay person would recognize the necessity for a doctor's

8

attention"; or (3) is one for which "the denial of treatment would result in the unnecessary and wanton infliction of pain" or "a life-long handicap or permanent loss." *Atkinson v. Taylor*, 316 F.3d 257, 272–73 (3d Cir. 2003) (internal quotations and citations omitted). When evaluating this element, courts consider factors such as "the severity of the medical problems, the potential for harm if the medical care is denied or delayed and whether any such harm actually resulted from the lack of medical attention." *Maldonado v. Terhune*, 28 F. Supp. 2d 284, 289 (D.N.J. 1998).

Vega's complaint, as pleaded, does not contain facts establishing that he suffered from a "serious" condition. He alleges that "[a]round the middle of 2022," he "started to feel the worst flu-like symptoms," his head "hurt so bad," his "bones felt like they were on fire," and "these symptoms along with [his] breathing . . . being affected" caused him "the worst pain." DE 1 at 9. These allegations, without more, are insufficient. Vega does not state how long these symptoms lasted; what medical treatment he felt he needed and did not receive; nor does he allege that he tested positive for COVID; that he was "diagnosed by a physician as requiring treatment"; that he had an underlying condition or extreme symptoms such that, if he did have COVID, the need for hospitalization or other intervention would have been obvious to a layperson; or that the alleged denial of treatment resulted in "a life-long handicap or permanent loss." *Atkinson*, 316 F.3d at 272–73. The most plausible inference to be drawn from the complaint as pleaded is that he suffered temporary, flu-like symptoms beginning in the middle of 2022, lasting for an unspecified period of time, from which he recovered after being prescribed aspirin and bed rest.

The Court acknowledges that flu-like symptoms are unpleasant and can even be debilitating for a number of days, but experiencing such symptoms and then recovering, without more, does not state a viable claim, as many courts have found. *See Marquez v. Aviles*, No. 22-

6239, 2023 WL 2019622, at *3 (D.N.J. Feb. 15, 2023) (dismissing medical indifference claim where "[a]t most, the complaint appears to allege that Marquez fell ill with flu or Covid symptoms for some unspecified amount of time (although the symptoms are not described) and then recovered"); *Graham v. Aviles*, No. 22-5760, 2022 WL 16949131, at *3 (D.N.J. Nov. 14, 2022) ("To be sure, COVID-19 (if Graham in fact contracted COVID-19) may be a serious illness, particularly when coupled with underlying conditions that exacerbate the risk, but temporary symptoms, without more . . . are insufficient to establish a 'serious' medical need.").[2] The conditions that Vega describes were not life-threatening, and are not alleged to have resulted in a life-long handicap or permanent loss. Some dramatic language aside, it is not evident that this ailment was one that would cause extreme pain or suffering of the sort required to state a constitutional violation.

Even assuming Vega sufficiently alleged a serious medical need, he has failed to plausibly allege that the defendants were deliberately indifferent to that need. Deliberate indifference exists when a defendant "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). This standard requires that defendants were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and drew that inference. *Natale*, 318 F.3d at 582. As currently pleaded, Vega's

---

[2] *See also, e.g.*, *Est. of Lillis by & through Lillis v. Correct Care Sols., LLC*, No. 16-03038, 2018 WL 1569752, at *7 (D. Colo. Mar. 30, 2018) ("'flu-like symptoms' do not generally rise to the level of severity necessary to constitute a 'serious medical need.'"); *Kennedy v. Dallas Police Dep't*, 2007 WL 30260, at *4 (N.D. Tex. Jan. 4, 2007) ("flu-like symptoms" did not constitute "serious harm" necessary to establish an Eighth Amendment violation); *Liggins v. Barnett*, No. 4-00-cv-90080, 2001 WL 737551, at *6 (S.D. Iowa May 15, 2001) ("The court has found no case in which a plaintiff suffering from flu-like symptoms . . . has been held to have had a serious medical need."); *Schwartz v. Jones*, 2000 WL 1859012, at *3 (E.D. La. Dec. 18, 2000) (failure to provide prisoner with aspirin for flu-like symptoms did not give rise to a federal constitutional claim for denial of medical care); *Ware v. Fairman*, 884 F. Supp. 1201, 1206 (N.D. Ill. 1995) (describing flu as "not serious"); *Haberstick v. Nesbitt*, No. 97-6523, at *3, 1998 WL 472447, at *3 (E.D. Pa. Jul. 29, 1998) (flu-like symptoms could not form the basis of a deliberate indifference claim where prisoner presented no evidence that flu was a serious medical need).

complaint does not plausibly allege that Aviles was aware of Vega's symptoms or that the defendants believed that Vega faced a substantial risk of serious harm without additional treatment. *See, e.g.*, *Est. of Cheney ex rel. Cheney v. Collier*, 560 F. App'x 271, 274 (5th Cir. 2014) (prison nurse's inattention to prisoner's symptoms after he "complained of the flu and reported and exhibited flu-like symptoms including paleness body fatigue, chills, lack of appetite, and one or two instances of vomiting," did not rise to the level of an obvious or apparent risk to prisoner's health sufficient to infer that she acted with deliberate indifference).

To the contrary, it appears that Vega was seen regularly by medical staff and had frequent opportunities to describe his symptoms (DE 1 at 8 (Vega "continuously complained to Nurse Wint about how [he] was feeling")), and was prescribed medication and told to rest (*id.*).  At most, Vega alleges a disagreement with this treatment (although he does not explain what additional treatment or tests he thinks he should have received), but mere disagreement is an insufficient basis on which to establish a claim for deliberate indifference. *See Pearson*, 850 F.3d at 535 ("[W]hen medical care is provided, we presume that the treatment of a prisoner is proper absent evidence that it violates professional standards of care."); *Young v. Kazmerski*, 266 F. App'x 191, 194 (3d Cir. 2008) ("[t]he *Estelle* test gives substantial latitude to prison medical authorities to diagnose and treat inmates"); *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987) ("mere disagreement" as to proper medical treatment does not support a claim for deliberate indifference under the Eighth Amendment). In short, the alleged facts, even assuming they are true, do not support a finding of deliberate indifference to serious medical needs, and Vega does not present specific allegations that would indicate he received constitutionally deficient medical care.

As Vega provides no additional factual support for his § 1983 claim, the claim is dismissed for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B)(ii). This is, however, an initial screening, and the Court cannot state that amendment would be futile. Accordingly, the dismissal is without prejudice. Vega may file, within 60 days, a proposed amended complaint. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002) (leave to amend claims dismissed on screening should generally be granted unless amendment would be inequitable or futile). Any proposed amended complaint must comply with the pleading standards set forth above.

### F. Conclusion

For the reasons above, Vega's complaint is dismissed without prejudice on initial screening. An appropriate order follows.

DATED: February 28, 2023

/s/ Kevin McNulty

KEVIN MCNULTY
United States District Judge